UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────

DAVID JAMES DAHN,

                      Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
─────────────────────────────────

**Decision and Order**

18-CV-1507-HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 7, cited hereafter as "Tr."), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 15, 23. Plaintiff David James Dahn challenges the final decision of the Commissioner of Social Security (the "Commissioner") that he is not entitled to Disability Insurance Benefits under Title II or Supplemental Security Income under Title XVI of the Social Security Act. The Court has deemed the motions submitted on the papers under Rule 78(b).

## II. LEGAL STANDARD

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether [the Commissioner] applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and

citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla.' It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and editorial marks and citations omitted); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner

merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d) (2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, then the ALJ's review ends.  20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, the ALJ has an affirmative duty to develop the record.  *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to determine the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past.  20 C.F.R. §§ 404.1520(e) & 416.920(e).  The ALJ must then determine the individual's ability to return to past relevant work given the RFC.  *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

### III. DISCUSSION

At the outset, the Court notes that many of Dahn's arguments either are facially inconsistent with the record or are conclusory and undeveloped.  For example, Dahn asserts

4

that the ALJ's RFC determination is not "tied to any medical opinion," but the ALJ's decision clearly relies on the medical opinion of consultative examiner Samuel Balderman, M.D. Dkt. No. 15-1 at 18. Because it is not the Court's responsibility to develop arguments on a party's behalf, the Court declines to address any such conclusory claims, and instead confines its analysis to those arguments that Dahn has meaningfully briefed. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

In substance, Dahn argues that the ALJ erroneously relied on Dr. Balderman's consultative opinion. For the reasons discussed below, the Court rejects Dahn's arguments.

Before addressing those arguments, some factual background may be helpful. Dahn alleges that the symptoms associated with his medical conditions—diabetes, his heart condition, high blood pressure, abdominal attacks, dyslipidemia, and sleep apnea—prevent him from working. Tr. 73. For example, when his blood sugar drops too low, he has shortness of breath and dizziness. Tr. 51. Due to his heart condition, Dahn has chest pain when he raises his arms over his head. Tr. 52. Dahn also testified that when he walks he has kidney pain and feels "wor[n] out," Tr. 55, 64, and he reports difficulties with "lifting, squatting, bending, standing, reaching, using hands, walking, sitting, kneeling, and climbing." Tr. 20.

The ALJ concluded that Dahn's functional capacity was greater than what he claimed. The ALJ found that Dahn could generally perform light work, which requires "standing or

walking for six hours total in an eight-hour workday with intermittent sitting," *Yildirim v. Comm'r of Soc. Sec.*, No. 18-CV-6098, 2019 WL 3074062, at *3 n.5 (W.D.N.Y. July 15, 2019), and involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b) & 416.967(b). The ALJ also found that Dahn had several additional restrictions, in that he (1) could only incidentally use stairs, (2) could not work at unprotected heights or use dangerous moving machinery, tools, or chemicals, and (3) could not reach overhead. Tr. 20.

To reach this RFC determination, the ALJ relied on the medical records and Dahn's testimony regarding his daily activities. Tr. 20-22. As to medical opinions, the ALJ afforded "partial weight" to the consultative opinion of Dr. Balderman. Tr. 23. Dr. Balderman opined that, due to Dahn's coronary artery disease, he had a moderate limitation in his ability to push, pull, carry, lift, and climb. Tr. 23, 388. Dr. Balderman included no limitations related to Dahn's ability to walk, stand, or sit. *See* Tr. 388-89. The ALJ partially rejected Dr. Balderman's opinion insofar as he opined that Dahn's lumbar-spine problems caused a mild-to-moderate limitation in repetitive bending. Tr. 23, 388.

The Court turns to Dahn's arguments. First, Dahn argues that Dr. Balderman's use of terms like "mild" and "moderate" are too vague and therefore his opinion cannot be relied on. There is authority for the proposition that an ALJ cannot reasonably infer particular functional restrictions from such terms standing alone. *See, e.g.*, *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (subsequent history omitted) (concluding that physician's "use of the terms 'moderate'

6

and 'mild,' without additional information, does not permit the ALJ . . . to make the necessary inference that [the claimant] can perform the exertional requirements of sedentary work"). However, where the "surrounding context" gives those terms "concrete meaning," an ALJ may reasonably consider the opinion. *Spencer v. Comm'r of Soc. Sec.*, No. 19-CV-6053, 2020 WL 3542126, at *4 (W.DN.Y. June 20, 2020). In other words, the principle set forth in *Curry* is "inapplicable where . . . the consultative examiner conducts a thorough examination and explains the basis for the opinion." *Martin v. Comm'r of Soc. Sec.*, No. 19-CV-406, 2020 WL 3547042, at *2 (W.D.N.Y. June 30, 2020) (internal quotation marks omitted).

Measured by that standard, Dr. Balderman's opinion is not too vague. Dr. Balderman conducted a full examination of Dahn and specifically described his observations and findings. *See* Tr. 386-389. He noted that Dahn walked and stood without difficulty or assistance; could get on and off the exam table without assistance; had full range of motion and strength in his arms and hands; and had no evident muscle atrophy, swelling, or redness in his arms. Tr. 387-88. Given this surrounding factual context, the ALJ could reasonably infer that Dahn could perform the rigors of light work based on Dr. Balderman's opinion, which did not include any limitations concerning walking, sitting, or standing, but did include a moderate limitation as to Dahn's ability to push, pull, carry, lift, and climb. *See, e.g.*, *Golden v. Comm'r of Soc. Sec.*, No. 15-CV-385, 2016 WL 11268700, at *5 (W.D.N.Y. Nov. 8, 2016) (noting that "moderate limitations on repetitive heavy lifting, bending, reaching, pushing, pulling, or carrying are frequently found to be consistent with an RFC for a full range of light work" (internal quotation marks, brackets,

7

and ellipsis omitted)); *Guerney v. Colvin*, No. 14-CV-688, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) (collecting cases).

Second, Dahn argues that Dr. Balderman's opinion, which was issued in May 2015, became stale because of changes in his medical conditions. Specifically, Dahn notes that he subsequently underwent surgery for a coronary artery bypass graft and other physicians subsequently issued medical opinions that are more restrictive than Dr. Balderman's. Dkt. No. 15-1 at 18.

A stale opinion—that is, an opinion issued before the deterioration in a claimant's condition—"cannot constitute substantial evidence." *Fogan v. Saul*, No. 18-CV-1404, 2020 WL 772366, at *5 (W.D.N.Y. Feb. 18, 2020). This is because the opinion can no longer be said to accurately reflect the claimant's condition. *See Jimmerson v. Berryhill*, No. 16-CV-442, 2017 WL 3149370, at *5 (W.D.N.Y. July 25, 2017). But an opinion is not stale simply due to the "passage of time." *Byrd v. Saul*, No. 18-CV-1366, 2020 WL 1226892, at *5 (W.D.N.Y. Mar. 13, 2020).

In this case, the ALJ could reasonably conclude that Dr. Balderman's opinion had not become stale, despite Dahn's subsequent surgery. The ALJ noted that, prior to March 2015, Dahn received "limited treatment for cardiac issues" and was in "stable condition" prior to the surgery. Tr. 22. He underwent surgery after a diabetic ketoacidosis attack, Tr. 542, and later treatment notes indicate that his condition has been stable since then. *See, e.g.*, Tr. 543, 764, 806. Although Dahn asserts that his treating physician imposed several significant restrictions on his activities directly after his surgery, *see* Dkt. No. 15-1 at 18, the ALJ concluded that such

8

restrictions reflected "temporary" limitations "during the regular course of [post-surgery] recovery," and did not reflect Dahn's "overall abilities to function." Tr. 24. The ALJ also found that, to the extent Dahn's diabetes and heart condition did occasionally worsen, it was a function of non-compliance with treatment, not deteriorating condition. *See* Tr. 21. Indeed, Dahn himself testified that he had been non-compliant with treatment and nutrition but was better adhering to those recommendations by the time of the hearing. *See* Tr. 52-54.

Dahn develops no reasoned argument to demonstrate that the ALJ's view of the post-surgery record—*i.e.*, that Dahn's condition had not deteriorated—was inaccurate or erroneous. At most, Dahn contends that different inferences could be drawn from the medical record. That is insufficient to demonstrate that the ALJ erred. *See Pomales v. Comm'r of Soc. Sec.*, No. 18-CV-851, 2019 WL 6522854, at *6 (W.D.N.Y. Dec. 4, 2019) ("Under the substantial evidence standard of review, it is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or *to argue that evidence in the record could support his position.*" (internal quotation marks and brackets omitted)). Likewise, while Dahn emphasizes that other medical opinions include greater restrictions, he does not meaningfully develop any argument to challenge the ALJ's reasons for discounting those opinions.[1] Again, under the applicable standard of review, it is not enough merely "to argue that evidence in the record could support [the claimant's] position." *Id.*

---

[1] Dahn mentions in passing that the ALJ failed to "provide specific and legitimate reasons" for discounting the other medical opinions, but he does not explain *why* the ALJ's reasons were erroneous. Dkt. No. 15-1 at 19.

In short, the ALJ could reasonably find that Dahn's condition had not deteriorated after his surgery, and therefore could reasonably conclude that Dr. Balderman's opinion was not stale. For the same reasons, Dr. Balderman's opinion was not stale merely because he did not have the benefit of the complete medical record. *See Fambo v. Comm'r of Soc. Sec.*, No. 19-CV-521, 2020 WL 4277395, at *3 (W.D.N.Y. July 27, 2020) (medical opinion based on incomplete medical record "may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age").

Third, to the extent Dahn takes issue with the fact that the ALJ's RFC does not fully correspond with any one medical opinion, it is well-established that an RFC determination does not have to "perfectly correspond with any medical source's opinion." *Cervantes v. Comm'r of Soc. Sec.*, No. 17-CV-1125, 2019 WL 5208120, at *1 (W.D.N.Y. Oct. 16, 2019) (internal quotation marks omitted). Here, the RFC determination largely tracks Dr. Balderman's opinion, except as to a few additional restrictions that are separately supported by the record: Dahn was limited to incidental use of stairs and restricted from dangerous work situations to account for his occasional diabetes-induced dizziness, and he was restricted from overhead reaching to account for his cardiac condition. *See* Tr. 21-22. The latter limitation is consistent with Dahn's own hearing testimony. *See* Tr. 52 ("I know that sometimes I raise my arms over my head, I get chest pains.").

Fourth and finally, Dahn makes several arguments that are premised on his position that the ALJ could not reasonably rely on Dr. Balderman's opinion. *See, e.g.*, Tr. 15-1 at 23 (stating

10

that rejection of all opinions created evidentiary gap in the record); *id.* at 25 (arguing that the ALJ posed inadequate questions to the vocational expert).  Because the Court has rejected that premise, those arguments are not persuasive.

In sum, leaving aside his conclusory or undeveloped arguments, Dahn has not persuaded the Court that the ALJ erroneously relied on Dr. Balderman's opinion or otherwise erroneously constructed the RFC.  Accordingly, remand is not warranted.

## IV.   CONCLUSION

For the reasons discussed herein, the Court grants the Commissioner's motion (Dkt. No. 23) and denies Dahn's cross-motion (Dkt. No. 15).  The Clerk of the Court is directed to enter judgment and close the case.

SO ORDERED.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: September 14, 2020